RANDY S. GROSSMAN
United States Attorney
MICHAEL A. DESHONG
California State Bar No. 301041
ELIZABET F. BROWN
Virginia Bar No. 95709
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-9290/8921
Michael.Deshong@usdoj.gov
Elizabet.Brown2@usdoj.gov
Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>DAVID HERNANDEZ,<br><br>Defendant. | Case No. 22-CR-1913-BAS<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***<br><br>DATE: July 24, 2023<br>TIME: 11:00 a.m. |

The United States of America hereby files its Response and Opposition to Defendant's Motions *in Limine* to (1) Exclude testimony of Government Drug Expert; (2) Exclude Any Testimony Regarding TECs Information Being Offered; (3) Exclude Involuntary Statements Obtained During Custodial Interview; (4) Exclude Cell Phone Evidence; (5) Exclude ITU Lookout Evidence; (6) Exclude Jail Calls; (7) Exclude Prior Convictions/Arrests/Contacts; (8) Exclude Government Witnesses; (9) Exclude Defense Investigator from Exclusion; (10) Exclude Evidence Not Yet Produced; (11) Admit Prior Statements for Context and Other Non-Hearsay Purposes if the Motion to Exclude His Statement is Denied; (12) Exclude Evidence not Yet Produce; (13) Exclude Any Alleged Statements Made by Mr. Hernandez Not yet in Discovery; (14) Limit Rebuttal During Closing Argument; (15) Form and Conduct Motions; and (16) Leave to File Further Motions.

## I.

## STATEMENT OF THE CASE

On September 2, 2022, Defendant was arraigned on a single-count indictment charging him with importation of 500 grams and more of a mixture and substance containing a detectible amount of methamphetamine. ECF 1, 8. Defendant plead not guilty. A motion *in limine* hearing is scheduled for July 24, 2023, at 11:00 a.m., and a jury trial is scheduled for August 29, 2023.

## II.

## STATEMENT OF FACTS

The United States hereby incorporates by reference the Statement of Facts contained in its Motions *in Limine*. ECF 39 at 2–8.

## III

## THE COURT SHOULD DENY DEFENDANT'S MOTIONS *IN LIMINE*

### A. Special Agent Jamisha Johnson's Expert Testimony is Admissible

HSI Special Agent Jamisha Johnson is qualified to testify as a value expert at trial. Defendant argues that the Court should exclude any testimony as to drug courier profiles, the modus operandi of drug traffickers, the nature and structure of drug-smuggling operations, blind mules and the drugs' value. Defendant also argues that the United States Drug Expert will not be qualified and that the United States untimely disclosed the identity of the drug expert. Special Agent Johnson's qualifications and the regular practice in this district demonstrate she is qualified. To be clear, the United States only intends to elicit testimony from Special Agent Johnson regarding the value of the seized drugs. The remaining topics covered in the Motions *in Limine* (e.g., structure and modus operandi) were only included to provide Defendant notice in the event Defendant opens the door to those areas at trial.

#### 1. Agent Johnson is Qualified as a Value Expert and Her Testimony is Admissible

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. "Only relevant and reliable expert opinion testimony is admissible." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). Expert opinion testimony is relevant if the knowledge underlying it has a "valid. . . connection to the pertinent inquiry." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharms*, 509 U.S. 579, 592 (1993)). As noted in *Kumho*, "there are many different kinds of experts, and many different kinds of expertise." 526 U.S. at 150. Here, Special Agent Johnson provided charts detailing the drug value of methamphetamine around the time of Defendant's arrest and a document setting forth the street drugs price list to demonstrate how she determined her calculations. Nothing in the law requires a report be completed for an expert to be qualified. Expert testimony is reliable if the knowledge underlying it "has a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.*; *see also Sandoval-Mendez*, 472 F.3d at 655 (noting that expert testimony and specialized knowledge may render expert sufficiently reliable). "When evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id.* (quoting *Kumho*, 526 U.S. at 150). An experienced narcotics agent may testify in the form of an opinion, even if he or she bases that opinion in part on information from other agents familiar with the issue. *United States v. Golden*, 532 F.2d 1244, 1248 (9th Cir. 1976).

The United States has produced Special Agent Johnson's curriculum vitae, a list of cases where she has previously testified as a drug value expert, her drug value charts estimating the value of the seized methamphetamine. Bates 1441–42, 1447–50. The United States is providing a more formal expert disclosure providing a summary of Special Agent Johnson's expert testimony on drug value, and potential rebuttal testimony regarding the structure and modus operandi of drug trafficking organizations. As set forth in the Government's expert disclosure, Special Agent Johnson has extensive experience qualifying her as an expert in the value of drugs. She has been a Special Agent with HSI since 2008, including 8 years spent at task force based out of San Ysidro that focused on narcotics

smuggling. She is currently assigned to asset forfeiture where primarily deals with seizures of assets in narcotics related cases. Special Agent Johnson has participated in formal and on-the-job training in narcotics enforcement, and has gained familiarity with the techniques and methods utilized by drug distributors. Special Agent Johnson herself has testified as a drug value expert at five trials in this district since 2018. Based on all of this, Special Agent Johnson is qualified to testify as a drug value expert at trial and her testimony is reliable.

**2. Evidence Regarding Drug Courier Profile, Modus Operandi and DTO Structure Should Be Allowed if Defendant Opens the Door**

The United States does not intend to admit drug courier profile, modus operandi or DTO structure evidence in its case-in-chief, but the United States reserves all rights to elicit such testimony from Special Agent Johnson should Defendant open the door either via his questioning of the United States' witnesses or through his own case. *United States v. Valencia-Lopez*, 971 F.3d 891, 901 (9th Cir. 2020) ("We do not question that expert modus operandi testimony is admissible in drug smuggling cases involving unknowing or coerced couriers."); *United States v. Beltran-Rios*, 878 F.2d 1208, 1210–13 (9th Cir. 1989) (approving the use of drug courier profile evidence where defendant "opened the door" by suggesting he did not fit the profile); *United States v. Patterson*, 819 F.2d 1495, 1507 (9th Cir. 1987) ("Expert testimony on the structure of criminal enterprises is allowed to help the jury understand the scheme and assess a defendant's involvement in it."). The United States briefed the admissibility of modus operandi and DTO structure in its Motions in Limine (ECF 39 at 17-20), incorporated herein.

**3. Evidence Regarding "Unknowing Couriers" and "Blind Mules" Should Be Allowed if Defendant Opens the Door**

The Court should reject Defendant's motion to exclude expert testimony regarding "unknowing couriers" and "blind mules." The United States briefed the admissibility of both in its Motions *in Limine* (ECF 39 at 17-20), and it incorporates that briefing herein. The United States does not intend to attempt to elicit testimony that unknowing couriers do not exist.

However, Defendant recently requested discovery related to individuals in drug importation cases who claim to have had narcotics placed in their vehicles in Mexico without their knowledge. If the Court permits Defendant to elicit testimony regarding these other cases, the United States should be permitted to respond. Specifically, the United States would seek to have Special Agent Johnson testify regarding some of the common characteristics shared by these other cases (e.g., regular border crosses with a predictable crossing pattern, people who visit a fixed location in the United States and leave their car unattended, cars with drugs hidden in easily accessible locations). The United States would then use that profile information to draw a contrast between Defendant's case (irregular crossing pattern, no routine fixed location, drugs concealed inside a gas tank) to show the other cases have no relevant to the material issue in this case: Defendant's knowledge. The United States is concerned that this issue risks becoming a "trial within a trial" and asks the Court to exclude it entirely. However, to the extent Defendant is permitted to raise the issue, the United States seeks leave to clarify what facts are typically present in an alleged "blind mule" case to avoid leaving the jury with the misleading impression that Defendant's case is similar.

**4. Evidence of the Value of the Drugs Should Be Admitted**

The Court should reject Defendant's Motion to exclude all testimony regarding drug value. As discussed in the United States' motion *in limine* (ECF No. 39 at 16-17), incorporated herein, the Ninth Circuit permits the use of expert testimony regarding drug value. *See*, *e.g.*, *United States v. Ogbuehi*, 18 F.3d 807, 812 (9th Cir. 1994) (DEA agent testimony about retail value of heroin admissible in prosecution for importation of 2.5 kilograms of heroin, and affirming district court allowing argument about its significance to jury); *Gaylor v. United States*, 426 F.2d 233, 235 (9th Cir. 1970) (testimony of selling price of cocaine in Mexico was admissible evidence of knowledge to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States").

Expert testimony of the value of the drugs, including the retail value, is admissible because it is relevant to show that Defendant was a trusted courier and is circumstantial

evidence that he knew what he was doing. *See United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics is relevant to demonstrate defendant's knowledge). That relevance is not diminished by the fact that Defendant is not charged with being the individual intended to distribute the drugs, the ultimate retail value of the drugs nonetheless conveys that he was an individual entrusted with successfully importing a load of narcotics with a particular value to the individuals who were the ultimate owners of the load. The Ninth Circuit has squarely permitted such testimony to show a defendant's understanding and awareness. *See United States v. Sepulveda Barraza*, 645 F.3d 1066, 1068 (9th Cir. 2011); *Savinovich*, 845 F.2d at 838 (price, quantity, and quality of narcotics are relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them).

**B. <u>TECS Border Crossing Records Are Admissible</u>**

The United States incorporates herein its Motions *in Limine* regarding the admission of Defendant's, the load van's and the motorcycle's border crossing history. ECF 39 at 11–12. First, with respect to Defendant's claim that TECS crossing records are undisclosed Rule 404(b) evidence, the United States posits that these records are inextricably intertwined with Defendant's instant offense as noted in its Motion *in Limine*. They demonstrate Defendant's control and dominion over the vehicle that contained drugs concealed inside its gas tank. Defendant's control and pattern of crossing the van is relevant because it goes to the implausibility of someone gaining access to the van long enough to remove the gas tank, place drugs inside, and then re-install the gas tank without Defendant's knowledge. His crossing history is also relevant because Defendant drives the van across the border with no predictable pattern. This lack of predictability is relevant because, again, it shows that even if someone could place drugs in Defendant's van, they would not know *when* the drugs would be taken across the border. The evidence of dominion, control, and lack of a predictable pattern is necessary to tell the story regarding the drugs in Defendant's gas tank on the day of his arrest.

Second, to the extent the TECs records are subject to a Rule 404(b) analysis, they should still be admitted. The United States seeks to introduce these records for non-propensity

purposes, including Defendant's knowledge, intent, absence of mistake, and lack of accident. The same reasoning above applies under the Rule 404(b) analysis. The crossing records show Defendant's intent, knowledge and the absence of mistake or accident by demonstrating that he controlled the van and when it crossed the border.

Third, these records are not undisclosed expert testimony. The Ninth Circuit Court has previously held that TECS records are admissible with the testimony of a custodian with personal knowledge. *See, e.g.*, *United States v. Oceguerra-Aguirre*, No. 02-50321, 2003 WL 21750802 (9th Cir. 2003). In this case, the case agent, Homeland Security Investigations Special Agent Mark Jay, will testify to authenticate the TECS records based on his experience using the system. Last, the TECS records are admissible through the public records hearsay exception. *See United States v. Orozco*, 590 F.2d 789, 794 (9th Cir. 1979). Accordingly, the TECS crossing records should be admitted as public records that are relevant evidence of Defendant's knowledge.

**C. <u>Defendant's Statements Were Voluntary, and Defendant Knowingly and Voluntarily Waived His *Miranda* Rights</u>**

**1. Defendant's Entire Statement Was Voluntary**

First, Defendant's motion appears to conflate the voluntariness of Defendant's *statement* with the voluntariness of his *waiver*. These are two very different allegations. *Statements* are unconstitutionally involuntary when a "'defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "Coercive police activity is a necessary predicate to the finding that a confession is not voluntary . . . ." *United States v. Hile*, 626 F. App'x 674, 676 (9th Cir. 2015) (unpublished) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

Defendant's motion does not allege any facts to call into question the voluntariness of Defendant's *statement* or argue that it was coerced. The very idea that his statement was

coerced is facially implausible given that *he did not confess*. At trial, the Government will present testimony to confirm the lack of coercion during Defendant's interview, including playing portions of it so the Court and the jury can view the atmosphere in the room for themselves. However, the Government will also present testimony that no law enforcement raised their voice at Defendant, no one threatened him, no one made false promises to him, and no one brandished a firearm to intimidate him. All of Defendant's statements were made voluntarily.

**2. Defendant Understood His Rights and Provided a Knowing and Voluntary Waiver**

Defendant appears to argue that the *Miranda* waiver was not voluntary, knowing and intelligent, with a mere reference to Defendant's primary language being Spanish, and that the *Miranda* waiver and post-*Miranda* interview happened in English. At the start of the interview Agent Jay asked Defendant whether he was "okay with English," and Defendant said "I am." After about seven minutes of Defendant answering the biographical questions in English, Agent Jay again asked, "you prefer English, right?" to which Defendant replied "Yeah." The United States will lodge a disk containing certain exhibits consisting of clips from Defendant's post-arrest interview. Exhibit 1 includes a short excerpt of Defendant listening to these questions *in English*, and responding without any issue *in English*.

After confirming Defendant was "okay" with English. Special Agent Jay proceeded to ask Defendant a series of biographical questions. This sequence of events, including the questions about Defendant's biographical information, took about 8 minutes and Defendant and Agent Jay conversed in English together. This included Defendant at one point clarifying what Agent Jay meant when he asked for Defendant's occupation and Defendant replied, "Where I work?" This shows that Defendant understood what Agent Jay said, and that he clarified when he was unsure.

After the biographical questions, Agent Jay again confirmed that Defendant preferred English before advising Defendant of his *Miranda* rights. Exhibit 2 contains Special Agent Jay again confirming Defendant's preferred language and advising him of his *Miranda* rights.

At times, Defendant appears to nod his head or provide answers under his breath, but Defendant continually confirms he understands his rights along the way. For the purpose of understanding Defendant's understanding his rights, Defendant has approximately 9 criminal convictions going back the past 20 years. It stands to reasons that Defendant was previously advised of his *Miranda* rights on at least a few of these prior occasions. In other words, he was not in an entirely unfamiliar set of circumstances.

Agent Jay thereafter read the *Miranda* waiver to Defendant, "I have read, or someone has read to me, this statement of my rights. I understand what my rights are. At this time, I'm willing to answer questions without a lawyer present," and asked "Are you okay talking to me right now without a lawyer?" When Defendant said, "I mean, I don't know, but I guess," and "I mean, there's nothing to hide. I mean yes," Agent Jay specified that "it's up to you," and then "So print your name and sign there," which Defendant did. Defendant's written *Miranda* wavier is attached as Exhibit 3. There was no pressure on Defendant to coerce a waiver and nothing to indicate he did not understand his rights and provide a knowing waiver. To the contrary, his comments as he agreed to sign the waiver indicate he did understand the nature of the rights hew as waiving.

**3. Defendant Asks to Stop Interview**

Defendant's motion references a point after *Miranda*, about a third way through the interview, when Defendant says, "Let's stop," as a reason his statement should be excluded. The United State proffers that it will not seek to admit statements made after Defendant says, "Let's stop" in its case in chief, and so the Court does not need to address whether the "Let's stop" interaction constitutes Defendant invoking his right to silence. However, the United States does not believe Defendant's request implicates the voluntariness of his statement. Accordingly, the United States reserves its right to use any statements in Defendant's post-arrest interview for impeachment. *See James v. Illinois*, 493 U.S. 307, 312 (1990) (Prosecutors may "impeach defendants using incriminating yet voluntary and reliable statements elicited in violation of Miranda requirements"), *Mincey v. Arizona*, 437 U.S. 385, 397-98 (1978) (a

Miranda-defective statement is admissible for impeachment whereas an involuntary statement is not).

To provide some context, agents interviewed Defendant after they had already interviewed his wife, who was arrested with him. Defendant's wife told agents that Defendant had taken the van with the drugs to a mechanic the day before and that the gas gauge on the van had been broken. As Defendant began to speak, he quickly contradicted his wife by claiming he had not taken the van to a mechanic for a week and asserting that the gas gauge was working. As the agents began to point out issues or contradictions with Defendant's story, Defendant began to say the agents were going "too fast." These complaints ultimately lead to Defendant saying he wants to stop. As noted above, the United States agrees not to use any statements after Defendant said he wanted to stop.

**D. <u>The Cell Phone Evidence is Admissible</u>**

Defendant appears to agree that the United States can admit cell phone evidence as long as the specific cell phone evidence is relevant, and the probative value is not substantially outweighed by any prejudicial effect. The United States identified very limited and specific phone evidence it will seek to admit during its case-in-chief and briefed their admissibility in its Motions *in Limine*, ECF 5-8, 12-15, incorporated herein. The United States intends to lay the foundation to show that the cellular phones seized at the time of Defendant's arrest were, in fact, his phones. The messages, images, and video identified by the United States are relevant evidence of Defendant's knowing importation of controlled substances.

**E. <u>The Motion to Exclude ITU Lookout Evidence Is Moot</u>**

Defendant asks the Court to exclude evidence of an ITU lookout that may be presented by the United States. This motion is moot, as the United States does not intend to seek to admit any such evidence during its case-in-chief

**F. <u>The Motion to Exclude Jail Calls Is Moot</u>**

Defendant asks the Court to exclude jail calls that may be presented by the United States. This motion is moot, as the United States does not intend to seek to admit any such jail call recordings during its case-in-chief.

**G. Motion to Admit Prior Conviction**

Under the Ninth Circuit's five-factor test set, forth in, *inter alia*, *United States v. Browne*, 829 F.2d 760, 762–63 (9th Cir. 1987), the United States should be permitted to impeach Defendant (should he choose to testify) with his most recent felony conviction for Grand Theft: Money/Labor/Property from 2019. Should Defendant testify, his credibility will be critical and, though there is little similarity between the grand theft conviction and the drug-importation charges at issue here, the United States should be allowed to impeach Defendant's credibility with the conviction. Further, the United States agrees to "sanitize" the prior conviction by not referencing the nature of it. Allowing the United States to impeach Defendant with his prior felony conviction—without referencing the nature of the conviction—balances the probative value of the jury knowing he is a convicted felon, while minimizing the risk of unfair prejudice.

**H. Response to Motion to Exclude Government Witnesses from All Trial Proceedings**

"[A] person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. Fed. R. Evid. 615; *see, e.g., United States v. Valencia-Riascos*, 696 F.3d 938, 941–43 (9th Cir. 2012) (finding no abuse of discretion in allowing case agent to remain in courtroom throughout trial and to sit at prosecution's table). Here, the case agent, HSI Special Agent Mark Jay, has been critical to the investigation and is considered by the United States to be an integral part of the trial team. He should be allowed to be present during the trial. The United States does not oppose the exclusion of all other testifying witnesses, United States and Defendant's, from the courtroom during trial.

**I. The Motion to Exclude Defense Investigator from Witness Exclusion Orders**

The United States does not object to allowing defense investigator Sean Sinnegan in the courtroom during trial.

**J. Any Remaining Discovery Should Not Be Excluded**

The United States opposes Defendant's motion to exclude the introduction of any evidence not yet produced absent a finding that the United States has failed to comply with its disclosure obligations under Rule 16.[1] Absent such a finding, the Court should allow the United States to introduce any evidence that is relevant, admissible, and not prohibited under Rule 403. The United States has worked diligently to produce discovery and will continue to do so. At this time, an order excluding further discovery is not warranted.

**K. Exclude Defendant's Self-Serving Hearsay**

The United States opposes Defendant's request to admit "any of his prior statements from any witness," that are "not offered for their truth," that are "within an exception to the hearsay rule," or that are "offered under Rule 106 to correct a misleading impression created by the Government's selective introduction of other portions of the post-arrest interview." The United States addressed this in its Motion *in Limine*, ECF 39 at 19 – 21.

**L. Any Statements Made by Defendant Not Yet Produced Should Not Be Excluded**

To date, the United States has diligently produced Defendant's statements of the event. If the United States is not aware of any other statements by Defendant that have not already been produced. This motion should be denied as moot.

**M. Response re Rebuttal Limit, Form and Conduct, and Leave to File Further Motions**

First, the United States anticipates that its rebuttal will be responsive to Defendant's closing. To the extent Defendant thinks the Government's argument exceeds the scope of proper rebuttal, the issue should be handled with objections during trial. There is no need for a preemptive ruling.

---

[1] The United States previously produced curriculum vitae and reports and materials for all of its proposed expert witnesses. Concurrent with the motions, the United States has provided Defendant's counsel with signed Rule 16 expert disclosures for all of its expert witnesses with the exception of the DEA chemist. The United States anticipates that notice will be signed and provided on July 18, 2023.

Second, the United States does not oppose Defendant's request to exclude witnesses from the Courtroom during trial, as briefed above, with the exception of Special Agent Mark Jay and Defense investigator Sean Sinnegan.

Third, the United States does not oppose Defendant's request to not send the Indictment into the jury room during deliberations.

Fourth, the United States does not oppose Defendant's request for attorney-conducted voir dire provided that the United States be granted the same.

Last, the United States does not object to Defendant's request to file further motions, so long as Defendant bases subsequent motions on newly discovered evidence or discovery provided by the United States after the filing of the Motion *in Limine*. The United States also respectfully requests the opportunity to file further motions should new information or legal issues arise

DATED: July 17, 2023

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/ *Elizabet F. Brown*
ELIZABET F. BROWN
Assistant U.S. Attorney

/s/ *Michael Deshong*
MICHAEL DESHONG
Assistant U.S. Attorney